UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MEGAN RIPBERGER for BONNIE MURPHY, deceased, ) ) ) Plaintiff, ) ) vs. ) ) CAROLYN W. COLVIN, ) COMMISSIONER OF THE SOCIAL ) SECURITY ADMINISTRATION, ) ) Defendant. ) | No. 1:12-cv-00612-SEB-TAB |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

The parties appeared by counsel August 7, 2013, for an oral argument on Plaintiff's claim for disability benefits. Set forth below is the Court's oral ruling from the bench following that argument. This ruling recommends that judgment be entered in favor of the Plaintiff and against the Defendant, remanding the decision of the Commissioner.

THE COURT: Okay. I will now give you my recommended decision on this case. I appreciate the argument from both sides. It's been very helpful, as were the briefs that you submitted.

In this case, the claimant raises essentially two issues on appeal, although the brief references three. The only two issues of significance that are raised and briefed and argued are, number one, that the ALJ erred in rejecting the claimant's treating physicians' opinions; and, number two, that the ALJ erred in making credibility determinations. In considering this appeal,

1

the Court must uphold the ALJ's decision as substantial evidence supports its findings pursuant to *Blakes*, B-l-a-k-e-s, *v. Barnhart*, B-a-r-n-h-a-r-t, 331 F.3d 565, 568, Seventh Circuit, 2003.

Additionally, the ALJ is obliged to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of non-disability while ignoring evidence that points to a disability finding pursuant to *Denton*, D-e-n-t-o-n, *v. Astrue*, A-s-t-r-u-e, 596 F.3d 419, 425, Seventh Circuit, 2010.

With respect to treating physicians, a treating physician's medical opinion is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record, pursuant to *Roddy*, R-o-d-d-y, *v. Astrue*, 705 F.3d 631, 636, Seventh Circuit, 2013.

An ALJ who rejects a treating physician's opinion must provide a sound explanation for the rejection. That's *Roddy*, R-o-d-d-y, at 636; and the case of *Campbell*, C-a-m-p-b-e-l-l, *v. Astrue*, 627 F.3d 299, 306, Seventh Circuit, 2010.

Plaintiff here contends that the ALJ improperly rejected the medical opinions of two treating physicians, Drs. Downey and Rawlins, R-a-w-l-i-n-s, as well as the opinion of treating psychologist Dr. White. I will address each of those in turn.

With respect to Dr. Downey, the ALJ rejected the opinion of Dr. Downey because there is "no evidence that Dr. Downey actually saw or examined the claimant." That's in the record at page 39. The ALJ points out that the medical records from Dr. Downey's facility show that the claimant only saw Elizabeth Helmi, a nurse practitioner. Even if Dr. Downey provided some oversight, there's no evidence of any detailed examination or regular contact by Dr. Downey. Moreover, the ALJ noted that Dr. Downey is not a specialist with respect to Murphy's alleged impairments.

Finally, the ALJ notes that there is no evidence that Dr. Downey saw the claimant after January 2006, the time period when the plaintiff started seeing Dr. Rawlins at a different Family

2

Health location.

I would also note that the ALJ did not totally reject Dr. Downey's opinion. The ALJ concluded that Dr. Downey's opinion is consistent with the residual functional capacity restrictions "with regard to lifting no more than ten pounds or standing/walking no more than a total of two hours, the core exertional requirements of sedentary work."

In my view, the ALJ adequately explained why he was rejecting parts of Dr. Downey's opinion and, in doing so, adequately accounted for the factors set forth in the applicable regulations. The plaintiff's argument that the ALJ erred in rejecting Dr. Downey's opinion is not persuasive.

With respect to Dr. Rawlins, the plaintiff claims that the ALJ also erred in rejecting that treating physician's opinions. I would note that the Commissioner seemed to be arguing, at least in its brief, that Dr. Rawlins' opinions and statements in its November 2008 letter should have little or no consequence, because that is dated after December 31st, 2007. There's a footnote in the Commissioner's brief to that effect. However, during oral argument, the Commissioner has backed away or clarified that position.

I believe that even though the date occurs after December 31st, 2007, the findings and conclusions and opinions in that letter are relevant to a determination of disability, because Dr. Rawlins found in that letter that the plaintiff's condition was chronic and worsening, and that the plaintiff's condition had significant progression. The letter also references extensive treatment that predated December 31st, 2007.

Moreover, as fully set forth in the plaintiff's brief, the Court agrees that the ALJ erred by concluding that the claimant's heart condition was improving after her surgeries. Notably, the claimant's ejection fraction prior to her quadruple bypass surgery was 25 percent, yet post-surgery it was approximately 35 percent, and remained that high even after the implementation -- excuse me, implantation of a cardioverter-defibrillator.

3

After the bypass surgery, Dr. Kravitz, K-r-a-v-i-t-z, stated that Murphy was at a high risk of sudden death, and Murphy died ultimately of myocardial infarction despite having a defibrillator. And, as noted in the oral argument, this condition resulted in limited ability to do any lifting, lifting restrictions, and, of course, risk of sudden cardiac death, which is noted in the record at 787.

The claimant also references a May 29, 2003, residual functional capacity questionnaire completed by Dr. Rawlins, in the record at page 279, and asserts that it was erroneous for the ALJ to conclude that the claimant had only seen Rawlins since 2007, or perhaps not at all. The Court agrees with that. That's clearly an error. But, the ALJ -- the ALJ did not consider the questionnaire and the attachment of the records, which are highly significant. Those records support the claimant's allegations relating to depression and diabetes. That's in the record at 283 through 290.

Perhaps most notably, they include several observations about suicidal intentions and her diabetes being out of control. That later observation is consistent with Rawlins' November 2008 letter that the ALJ rejected due to no other evidence of "serious highs or lows in blood sugar." That's in the ALJ's decision, pages 39 through 40.

The questionnaire indicates that Murphy's pain is severe enough to constantly interfere with attention and concentration at work, even with simple tasks; that she must walk every 30 minutes, for five minutes each; that she needs a job that permits shifting positions at will from sitting to standing to walking; will need unscheduled breaks during an eight-hour workday, about every 30 minutes; can rarely lift more than ten pounds in a work situation; has significant limitations reaching, fingering, and handling; and has zero percent ability in both hands, fingers, and arms to twist, manipulate, and reach for objects.

The ALJ failed to address this contrary evidence which, when considered in conjunction with Dr. Rawlins' November 2008 letter and the other medical evidence in the record, could

4

reasonably have led the ALJ to conclude that Murphy's residual functional capacity is more limited than what the ALJ found. Consequently, the manner in which the ALJ improperly discounted the opinions of Dr. Rawlins provides a basis for a remand.

The same is true with respect to Dr. White, whom the ALJ rejected for several reasons. In arguing that it was an error for the ALJ to do so, the claimant cites evaluations from Drs. Judith Schwartzman, S-c-h-w-a-r-t-z-m-a-n, and Mary Ann Jones, who are both psychologists. These evaluations indicate anxiety, tearfulness, paranoia, and bipolar disorder I, and other symptoms of depression and limited work.

Additionally, as noted, medical records from Dr. Rawlins, dating back to 2003, support long-term depression and the symptoms described by Dr. White. It's noteworthy that Dr. White and Dr. Rawlins shared the same office during the relevant time period.

In those records that I just mentioned, Dr. Rawlins repeatedly notes suicidal intentions, tearfulness, insomnia, lack of interest, decreased appetite, depression, and other related symptoms. That's in the record at pages 283 through 290.

The ALJ failed to take this evidence into consideration when determining the weight that should have been given to Dr. White's opinion. Accordingly, the ALJ erred in rejecting Dr. White's opinion in its entirety without considering this additional evidence. This error is not harmless, because Dr. White's opinion supports Murphy's alleged limitations. So, the rejection of those two doctors' opinions provides a basis for remand and further consideration of those opinions.

Now, another issue that the claimant has raised goes to credibility, so I'll make a few comments on that. The claimant argues that the ALJ erred in not finding her credible. The Court must afford credibility findings considerable deference and overturn those findings only if patently wrong, pursuant to *Prochaska*, P-r-o-k-h-a-s-k-a, (sic), *v. Barnhart*, 454 F.3d 731, 738, Seventh Circuit, 2006. Plaintiff argues that the ALJ erred when concluding that Murphy's

5

left-arm impairment was not as severe as alleged.

In addressing issues such as credibility, I would note that the ALJ stated in his opinion that the plaintiff did not seek any physical therapy.  That's at page 44.  The ALJ also stated that, given Murphy's level of intelligence -- she apparently has multiple college degrees -- the ALJ also found that not seeking treatment from a specialist was revealing, which is further underscored by the fact that she never sought physical therapy, according to the ALJ.

As the claimant points out, this reasoning is flawed.  First, the ALJ is incorrect that the claimant never sought physical therapy.  She did.  I believe that's in the transcript at page 178.  A December 2000 record indicates that she was taking physical therapy for problems with her upper extremities.  That's also at page 178.

Additionally, Plaintiff points out that Dr. Shick, S-h-i-c-k, recommended that Murphy not have further surgery due to her diabetes, hypothyroidism, and polyneuropathy, which may explain why she didn't see a specialist.  Moreover, as discussed above, the ALJ did not consider the residual functional capacity questionnaire that supports the claimant's claims related to her limitations.

As noted, the questionnaire indicates that the claimant's pain was severe enough to constantly interfere with attention and concentration at work, even with simple tasks, that she must walk every 30 minutes, for five minutes each.  She needs a job that permits shifting positions at will from standing to sitting to walking.  She will need unscheduled breaks during an eight-hour workday, about every 30 minutes; can rarely lift more than ten pounds in a work situation; has significant limitations reaching, fingering, and handling; and has zero percent ability in both hands, fingers, and arms to twist, manipulate, and reach for objects.  The ALJ should reweigh the evidence in light of this questionnaire and the other evidence I've mentioned in assessing the plaintiff's credibility.

I am not finding at this time that the credibility determination provides an independent

6

basis for remand, given the high standard that applies in deference that the ALJ is entitled to in making those credibility determinations. But, since I have found, given the improper rejection of the treating doctors, that remand is appropriate, I think it also would be appropriate for the ALJ to reweigh the plaintiff's credibility in light of that important medical evidence that the ALJ either ignored or simply failed to mention in his evaluation.

And then, finally, I would at least have to note two final matters, which are somewhat significant, that we talked about at oral argument and in the briefs. The first is the grant writing, which, frankly, would give me a little pause in terms of how much grant writing the plaintiff appeared to be doing. But, as the plaintiff's counsel pointed out, the grant writing at issue was not productive, gainful, or apparently particularly successful. And I think it's reasonable to conclude that, at most, the plaintiff was attempting in some way to do some type of work, which really shouldn't be used to penalize her. It might be fair to say that that is something that would be a fact that would go in her favor, that she was attempting to do something.

And, finally, the Commissioner has raised an issue as to the ALJ's limited RFC. As to whether the ALJ gave Plaintiff a limited RFC that adequately accounted for Plaintiff's impairment, I would note that while this is true to some extent, the ALJ found Plaintiff's RFC similar to that in the prior decision, which he states at page 31 of his opinion. And that is inconsistent with what the medical records describe as a worsening condition. And, therefore, that's not a basis to ultimately sustain the ALJ's decision.

So, at the end of the day, I'm most concerned about the rejection of the treating physicians, specifically Dr. Rawlins and Dr. White, and remand is appropriate for the improper rejection of those treating physicians. Upon remand, I believe it would be appropriate for the ALJ also to revisit credibility issues and the other issues discussed in this recommended opinion.

Mr. Rake, do you have any questions about that?

MR. RAKE: No. Thank you, Your Honor.

    THE COURT: All right. Ms. Pedderson, any questions?

    MS. PEDDERSON: No, Your Honor.

    THE COURT: Okay. Thank you.

    (Proceedings adjourned at 12:43 p.m.)

 For the reasons above, the Magistrate Judge recommends that Ripberger's brief in support of her appeal [Docket No. 17] be granted, and the Commissioner's decision be reversed and remanded for further consideration. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

    Dated: 8/14/2013

             _____
             Tim A. Baker
             United States Magistrate Judge
             Southern District of Indiana

Distribution:

Michael A. Rake
HORENSTEIN NICHOLSON & BLUMENTHAL
psweet@hnb-law.com

Gary M. Blumenthal
HORENSTEIN, NICHOLSON & BLUMENTHAL
psweet@hnb-law.com

Danielle  Pedderson
SOCIAL SECURITY ADMINISTRATION
danielle.pedderson@ssa.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov